UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

--------------------------------X

WAYNE FABIAN

      Petitioner,              <u>MEMORANDUM AND ORDER</u>

  -against-                Civil Action No.
                                   CV-04-1896(DGT)

UNITED STATES OF AMERICA

      Respondent.

--------------------------------X

Trager, J:

    Movant Wayne Fabian ("Fabian" or "movant") brings this
motion pursuant to 28 U.S.C. § 2255 to vacate, set aside, or
correct his sentence.  For the reasons set forth below, the
motion is denied.

## Background

### (1)

    Movant participated in two robberies in February and March
of 2000.  On February 11, 2000, Fabian and co-conspirators Alex
Taveras ("Taveras") and Luis Ramirez ("Ramirez") forced their way
into the home of Emilio Veraz ("Veraz"), beat Veraz with a
pistol, restrained two children in the house with duct tape and
stole several thousand dollars and jewelry.  Evidence adduced at
trial established that Fabian and his co-conspirators targeted
Veraz because they believed him to be a loan shark and intended

to steal monies they believed to be the proceeds of his loan sharking business.

On March 7, 2000, Fabian, Taveras, Reynaldo Perez ("Perez") and other co-conspirators staged a home invasion of Juan Carlos Montoya ("Montoya") and Yessenia Gomez ("Gomez"). Evidence adduced at trial established that Fabian and his co-conspirators targeted the home because Perez had told them that Montoya was a drug dealer and that Montoya had hidden $300,000 in illegal drug trafficking proceeds, which Montoya had previously stolen from Miami drug dealers, inside either his Queens residence or inside Gomez's mother's home in Manhattan.[1] After forcibly entering the home, Fabian and Taveras restrained Gomez and her children and searched the house. When the money was not discovered, Fabian kidnaped Gomez, making Gomez take Fabian to her mother's house to look for the money there. Fabian was apprehended after a police chase on the way to Gomez's mother's residence.

In connection with these robberies, movant was charged with two counts of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. § 1951,[2] one count of attempted Hobbs Act

---

[1] Perez and Montoya had been friends since elementary school. At the time of the robbery, Montoya was in prison.

[2] Hobbs Act robbery is defined as: "[w]hoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or extortion or attempts or conspires so to do, or commits or threatens physical violence to any person or property in furtherance of a plan or purpose to do anything in violation of this section shall be

robbery, in violation of 18 U.S.C. § 1951, and one count of possessing and brandishing a firearm during a crime of violence, in violation of 18 U.S.C. § 924(c).[3]  After a jury trial, movant was convicted of all counts before this Court.

At his sentencing on August 9, 2001, movant argued for a downward departure based on the fact that the objects of both robberies were proceeds from "illegitimate businesses" and, therefore, outside the heartland of Hobbs Act cases.  This Court denied movant's motion and sentenced him to 168 months' imprisonment on each of the Hobbs Act charges, to be served concurrently, and to 84 months' imprisonment on the firearm charge, to be served consecutively to the other terms.  Fabian was also sentenced to five years of supervised release, ordered to pay $6,085.00 in restitution and further ordered to pay $400.00 in special assessments.

**(2)**

Fabian appealed his convictions under the Hobbs Act to the Second Circuit, arguing, <u>inter</u> <u>alia</u>, that: 1) proof at trial was legally insufficient to establish an adequate connection between Fabian's crimes and interstate commerce to support federal

---

fined under this title or imprisoned not more than twenty years, or both."  18 U.S.C. § 1951(a).

[3] A substantive Hobbs Act count related to the February 2000 robbery was dismissed on the government's motion before trial.

jurisdiction under the Hobbs Act; and 2) the jury charge as it related to the elements for a Hobbs Act conviction was erroneous and prejudicial because it relieved the government of its burden of establishing a nexus to interstate commerce.[4]  See generally Affirmation of Roger Bennet Adler ("Adler Affirmation"), Ex. F, Appellant's Br. at 41.  In a published opinion, the Second Circuit affirmed Fabian's convictions and sentence.  See United States v. Fabian, 312 F.3d 550 (2d Cir. 2002).  It specifically held that the evidence adduced at trial was legally sufficient to support Hobbs Act jurisdiction, noting that "both drug dealing and loan sharking, while illegal, have an effect on interstate commerce," id. at 555, and that the legally relevant inquiry was "whether at the time of the crime, Fabian believed he was robbing a loan shark and the proceeds of a drug deal,[5] not whether the

_____

[4] Fabian also argued that the district court erred in admitting the state court certificate of dispositions for Perez and Montoya, in failing to dismiss the firearm charge for lack of venue, in refusing to permit Fabian to recall Taveras during his case-in-chief and in failing to downwardly depart at sentencing because Fabian's conduct fell outside of the heartland of conduct covered by the applicable Sentencing Guidelines.  See generally Adler Affirmation, Ex. F, Appellant's Br. at 1-41.

[5] There was conflict between the majority and dissent in Fabian over whether Fabian believed that the goal of the March 2000 robbery was specifically to steal previously stolen drug trafficking proceeds ("drug trafficking proceeds") or whether it was simply to steal proceeds from a person who happened to have robbed a drug dealer ("robbery proceeds"), with the majority of the court concluding that Fabian believed the goal was to steal drug trafficking proceeds.  Compare Fabian, 312 F.3d at 555-557 with id. at 560-63 (Parker, J., dissenting).

crimes actually involved a loan shark and the proceeds of a drug deal." Id. It also found the challenged jury instructions to be proper. Id. at 558. Fabian's Petition for a Writ of Certiorari to the Supreme Court was denied on May 5, 2003. Fabian v. United States, 538 U.S. 1025 (2003).

On May 4, 2004, Fabian filed the present pro se motion to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 on the following grounds: (1) the jury instructions concerning the interstate commerce element violated Fabian's right to due process and right to a jury trial and Fabian's counsel rendered ineffective assistance of counsel at trial and on appeal by failing to object to the deficient jury instructions; (2) the district court lacked jurisdiction to impose judgment because the government failed to establish the interstate commerce element; (3) Fabian's counsel rendered ineffective assistance of counsel at trial by failing to adequately cross-examine witnesses; and (4) there was an impermissible variance between the indictment and the government's proof at trial and Fabian's counsel rendered ineffective counsel on appeal by failing to raise this issue on appeal. Fabian's § 2255 Motion ("Mot.") at 5. See also Mem. of Law in Supp. of Wayne Fabian's Pet. for a Writ of Habeas Corpus

("Mem. in Supp.").[6]

On October 18, 2004, the government filed its opposition to
Fabian's motion.  Government's Mem. of Law in Opp. to Fabian's
§ 2255 Pet. ("Mem. in Opp.").  On April 27, 2005, movant filed a
pro se reply.  Petr.'s Resp. to Government's Mem. of Law in Opp.
to Fabian's § 2255 Pet. ("Reply").  On August 16, 2005, Fabian,
by counsel, filed a memorandum of law, supplementing claims (1)
and (2), as set out supra.  Supplemental Mem. of Law in Supp. of
§ 2255 Petition for Habeas Corpus Relief ("Supplemental Mem. in
Supp.") at 1.  On July 19, 2007, the government responded to
Fabian's Supplemental Memorandum of Law.  Government's Letter
Response to Supplemental Mem. of Law in Supp. of § 2255 Pet. for

_____

[6] Fabian's couches the first ground in his pro se motion as
follows: "[t]he court allowed the prosecution to import
congressional findings [from other statutes] to satisfy the
interstate nexus" and Fabian's counsel rendered ineffective
counsel at trial and on appeal for failing to object "to the
[government's] use of congressional findings from other statutes
to lighten their burden of proof on a statute with an express
jurisdictional element."  Mot. at 5.  In his pro se Reply, Fabian
clarifies this point, arguing that the jury instructions "helped
the government out tremendously" by allowing the "jurisdictional
element [to be] satisfied, without any proof whatsoever of an
effect or potential effect on interstate commerce."  Reply at 5.
As the Supplemental Memorandum of Law submitted by counsel seems
to address the importation of congressional findings by attacking
the jury instructions, see Supplemental Mem. of Law in Supp. of
§ 2255 Petition for Habeas Corpus Relief ("Supplemental Mem. in
Supp.") at 5-19, Fabian's importation of congressional findings
claim will be construed as a challenge to the jury instructions.
To the extent that Fabian is arguing that there was insufficient
evidence to prove that the charged conduct actually affected
interstate commerce, and, therefore, the district court lacked
jurisdiction to impose judgment, this argument will be dealt with
in the "Absence of Federal Jurisdiction" section.

Habeas Corpus Relief ("Response to Supplemental Mem. in Supp.").

Recently, the Second Circuit abrogated, in part, its decision in United States v. Fabian, 312 F.3d 550 (2d Cir. 2002), in United States v. Parkes, -- F.3d. ----, 2007 WL 2317395, at *1-8 (2d Cir. Aug. 15, 2007). In Parkes, the Second Circuit held that the Hobbs Act requires proof that the charged conduct affected or would have affected interstate commerce in some de minimis way and that any charge instructing the jury that interstate commerce is affected as a matter of law is violative of the Fifth and Sixth Amendments. Parkes, -- F.3d. ----, 2007 WL 2317395, at *5-8. Specifically, Parkes held that jury instructions which allow congressional findings to substitute for proof beyond a reasonable doubt of the jurisdictional element of a Hobbs Act offense violate a defendant's right to due process and to a jury trial. Id. at *6-7 ("findings recited by Congress" in the Controlled Substances Act, 21 U.S.C. § 801 et. seq., cannot "dispense with the need for a jury finding that each element of the Hobbs Act has been proven beyond a reasonable doubt . . . To the extent that Fabian conflicts with this holding, it is no longer good law."). It should be noted that the Parkes court only overturned its decision in Fabian as to the constitutionality of the jury instructions insofar as they relied on congressional findings to establish the required effect on interstate commerce. The court, however, did not overturn its

holding in <u>Fabian</u> that the defendant's belief as to the goal of
the robberies at the time of the crime is sufficient to establish
a Hobbs Act violation, whether or not there is proof that the
actual circumstances of the robbery involved narcotics dealings
or loan sharking.

For the reasons explained below, the <u>Parkes</u> decision does
not alter the outcome of Fabian's section 2255 motion.

### Discussion

### (1)

### Legal Standards

### a. Law governing section 2255 motions

It is well established in the Second Circuit that "a § 2255
motion cannot be used to 'relitigate questions which were raised
and considered on direct appeal.'" <u>United States v. Sanin</u>, 252
F.3d 79, 83 (2d Cir. 2001) (quoting <u>Cabrera v. United States</u>, 972
F.2d 23, 25 (2d Cir. 1992)).  In addition, a movant may not
assert a claim in a section 2255 motion that he or she failed to
raise on direct appeal unless the movant can show "cause" for the
omission and actual "prejudice," or that movant is "actually
innocent."  <u>See</u> <u>Bousley v. United States</u>, 523 U.S. 614, 622
(1998).  However, this rule of procedural default does not
encompass ineffective assistance of counsel claims, which "may be

brought in a collateral proceeding under § 2255, whether or not the petitioner could have raised the claim on direct appeal." Massaro v. United States, 538 U.S. 500, 504 (2003).

**b. Standard for ineffective assistance of counsel claims**

In order to prevail on an ineffective assistance of counsel claim, the movant must show that: (1) "counsel's representation was deficient"; and (2) "this deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984).

In order to satisfy the first prong of the Strickland test, a petitioner must prove that his attorney's failure to object to the charge was so deficient it "fell below an objective standard of reasonableness," judged by "prevailing professional norms." Id. at 688-89. In evaluating this prong, the court must "'indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance,' bearing in mind that '[t]here are countless ways to provide effective assistance in any given case' and that '[e]ven the best criminal defense attorneys would not defend a particular client in the same way.'" United States v. Aguirre, 912 F.2d 555, 560 (2d Cir. 1990) (quoting Strickland, 466 U.S. at 689) (alterations in original). "The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the

alleged error and in light of all the circumstances, and the standard of review is highly deferential." <u>Kimmelman v. Morrison</u>, 477 U.S. 365, 381 (1986) (citing <u>Strickland</u>, 466 U.S. at 689).

In order to satisfy the second prong of the <u>Strickland</u> test, a petitioner must prove that his attorney's deficient performance prejudiced the defense such that "'that there is a reasonable probability that, but for counsel's unprofessional performance, the outcome of the proceeding would have been different.'" <u>United States v. Levy</u>, 377 F.3d 259, 264 (2d Cir. 2004) (quoting <u>United States v. Gordon</u>, 156 F.3d 376, 379 (2d Cir. 1998)). "'A reasonable probability is a probability sufficient to undermine confidence in the outcome.'" <u>Strickland</u>, 466 U.S. at 694. A showing that counsel's errors had "some conceivable effect" on the result is insufficient to establish this prong, for "not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." <u>Id.</u> at 693.

Ultimately, "[b]ecause 'it is all too tempting for a defendant to second-guess counsel's assistance after conviction,' the Second Circuit has instructed that a reviewing court should be 'highly deferential' in assessing counsel's performance." <u>Carneglia v. United States</u>, No. 03-CV-6388, 2006 WL 148908, at *3 (E.D.N.Y. Jan. 18, 2006) (quoting <u>Strickland</u>, 466 U.S. at 689).

The Supreme Court also made clear that "there is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." Strickland, 466 U.S. at 697. Finally, though formulated in the context of an ineffective assistance of trial counsel claim, the Strickland test applies equally to claims of ineffective appellate counsel. Jelinek v. Costello, 247 F. Supp. 2d 212, 266 (E.D.N.Y. 2003) (citing Claudio v. Scully, 982 F.2d 798, 803 (2d Cir. 1992).[7]

## (2)

### Fifth and Sixth Amendment Challenge to the Jury Instructions

Fabian argues that portions of the jury charge deprived him of his Fifth Amendment right to due process and his Sixth Amendment right to a jury trial and that Fabian's counsel, Roger Bennet Adler ("Adler"), was ineffective for failing to raise these issues at trial and on appeal. Mot. at 5; Supplemental

---

[7] In reviewing Fabian's motion, the Court requested an affidavit from Fabian's attorney, Roger Bennet Adler ("Adler"). Adler submitted an Affirmation on February 2, 2007. A review of the papers submitted by the parties, including a detailed affidavit from Adler, are sufficient to decide this issue; a full testimonial hearing is unnecessary. See, e.g., Campusano v. United States, 442 F.3d 770, 776 (2d Cir. 2006)("[T]he district court has discretion to determine if a testimonial hearing will be conducted."); Chang v. United States, 250 F.3d 79, 85-86 (2d Cir. 2001) (holding that review of submitted papers was sufficient on the facts of the case to satisfy the requirement for a hearing under 28 U.S.C. § 2255)). As such, Fabian's motion will be decided without a hearing.

Mem. in Supp. at 5-19.

At the close of Fabian's trial, the jury was instructed that "the obtaining of the proceeds of narcotics trafficking, is interstate commerce" and "loan sharking, is interstate commerce" and that, if the jury were to find that the objects of the conspiracies were "the obtaining of narcotics proceeds" and "the obtaining of loan sharking proceeds," respectively, then the interstate commerce element of those counts would be satisfied. Fabian argues that these instructions violated <u>United States v. Gaudin</u>, 515 U.S. 506 (1995), and <u>In re Winship</u>, 397 U.S. 358 (1970),[8] because the instructions took the factual question of whether obtaining the proceeds of narcotics trafficking and loan sharking affected interstate commerce away from the jury and, instead, instructed the jury that this was so. Supplemental Mem. in Supp. at 5-7. Instead, Fabian argues that the jurisdictional element of a Hobbs Act offense requires proof of an effect on interstate commerce, and, therefore, the government is required to provide, and the jury is required to find, evidence of such an effect beyond a reasonable doubt; a court may not take this function away from the jury by instructing it that facts comprising one of the elements of an offense are established as a

---

[8] <u>Winship/Gaudin</u> progeny are cases which generally stand for the proposition that a jury must find every element of a criminal offense proven beyond a reasonable doubt before finding a defendant guilty.

12

matter of law.  Supplemental Mem. in Supp. at 5-7, 12.  <u>See also</u>

Mem. in Supp. at 7, 9-13.  Fabian relies heavily on a 2005

decision from the Southern District of New York, <u>United States v.</u>

<u>Gomez</u>, No. 99-CR-740, 2005 WL 1529701, at *5-14 (S.D.N.Y. June

28, 2005), which found unconstitutional a similar charge

instructing the jury to find that narcotics trafficking

constituted interstate commerce.  Supplemental Mem. in Supp. at

8-12 (quoting <u>Gomez</u>, 2005 WL 1529701, at *5-11).[9]

     As a threshold matter, it appears that this issue was

already raised and considered on direct appeal.  Although Fabian

argues that the instructions challenged on appeal were a

different portion than the portion currently at issue, <u>see</u>

Supplemental Mem. in Supp. at 4-5, 13, 15, it is clear from the

record that Fabian, through his trial and appellate counsel,

raised this exact issue at trial and on appeal to the Second

Circuit <u>in addition to</u> another section of the jury charge.[10]  <u>See</u>

_____

     [9] <u>Parkes</u> was not decided until after the briefing of
Fabian's section 2255 motion.

     [10] <u>Compare</u> the jury instructions challenged in Fabian's
section 2255 motion:
     [T]his Court charged the jury as follows: 'I instruct you
     that the activity referred to in count [Count 1], obtaining
     the proceeds of narcotics trafficking, is interstate
     commerce and if you find that the object of the conspiracy
     alleged in count 1 was the obtaining of narcotics proceeds,
     you should find this element satisfied.'  The Court further
     charged the jury: 'I instruct you that loan sharking, is
     interstate commerce . . . '
Supplemental Mem. in Supp. at 7, <u>with</u> the jury instructions
challenged in Fabian's Appellant's Brief to the Second Circuit:

Adler Affirmation at ¶ 23 (stating that he addressed the issue in his Request to Charge, and objected to the instruction both at the charge conference and on appeal); Adler Affirmation, Ex. C, Request to Charge at 12 (requesting an instruction on "affecting interstate commerce"); Adler Affirmation, Ex. D, Feb. 9, 2001 Charge Conference Tr. at 532-36 (Adler objecting to the currently contested portion of the jury instruction at the charge conference); Adler Affirmation, Ex. F, Appellant's Br. at 35-36 (Appellant's Brief, objecting to the very same lines of the jury charge as does Fabian's section 2255 motion). Furthermore, not only did the Second Circuit cite to and uphold the currently challenged section of the jury charge in <u>Fabian</u>,[11] but it specifically noted in <u>Parkes</u> that "Fabian argued on appeal that the district court erroneously instructed the jury that interstate commerce was affected as a matter of law by [the

_____

Judge Trager charged the jury that obtaining the proceeds of narcotics trafficking was interstate commerce as a matter of law. The Court similarly charged the jury with respect to 'loan sharking.' Furthermore, [objection to another section of the instruction] . . . The charge had the effect of relieving the Government of the burden of establishing an actual nexus to, and adverse impact on, interstate commerce.
Adler Affirmation, Ex. F, Appellant's Br. at 35 (internal citations omitted).

[11] The Second Circuit stated: "Fabian next attacks the district court's jury charge, arguing it failed to require the government to prove an adverse impact on interstate commerce. The district court charged the jury that 'obtaining the proceeds of narcotics trafficking, is interstate commerce' and 'loan sharking, is interstate commerce . . . the jury instruction was proper.'"  <u>Fabian</u>, 312 F.2d at 558.

attempted robbery of loan sharking and drug trafficking proceeds]
and that evidence on the point was insufficient" and reaffirmed
that "in United States v. Fabian, this Court held, as a matter of
law, that 'loan sharking and drug proceeds affect interstate
commerce.'" Parkes, -- F.3d. ---, 2007 WL 2317395, at *6
(quoting Fabian, 312 F.3d at 553-58). Accord United States v.
Lorenzano, No. 03-CR-1256, 2007 WL 29231, at *9 (S.D.N.Y. Jan. 3,
2007) (finding that the "Second Circuit specifically upheld the
challenged instruction [that obtaining the proceeds of narcotics
trafficking is interstate commerce] in United States v. Fabian");
United States v. Robles, No. 04-CR-1036, 2006 WL 988249, at *1
(S.D.N.Y. Apr. 13, 2006) ("The instruction that 'obtaining the
proceeds of narcotics trafficking[] is interstate commerce' was
specifically upheld by the Second Circuit in United States v.
Fabian") (alteration in original).  Thus, it is clear that Fabian
did, in fact, raise these grounds for relief on direct appeal.

     As the Second Circuit's decision makes clear, Adler raised
the currently contested jury instruction at trial and on appeal.
Thus, Fabian's ineffective assistance of counsel claim is
baseless.  See Favia v. United States, No. 01-CV-6385, 2007 WL
2071861, at *4-5 (E.D.N.Y. July 17, 2007) (finding baseless
ineffective assistance of counsel claims in section 2255 motion
where claims were based on attorney's failure to move for
specific downward departures and the record was clear that

                              15

attorney did, in fact, move for such departures); Robinson v.
United States, 03-CV-1112, 2004 WL 324878, at *4 (S.D.N.Y. Feb.
19, 2004) (finding baseless ineffective assistance of counsel
claim in section 2255 motion where petitioner's "attorneys in
fact raised the issues . . . that are the basis for his
petition").

As discussed previously, the Second Circuit recently changed
its jurisprudence in Parkes and ultimately agreed with Fabian
that the charge instructing the jury that interstate commerce was
affected as a matter of law was unconstitutional.  See Parkes, --
F.3d. ----, 2007 WL 2317395, at *6-7 (abrogating the part of
Fabian which upheld as constitutional the jury instructions that
"the obtaining of the proceeds of narcotics trafficking, is
interstate commerce" and "loan sharking, is interstate
commerce").  As will be discussed, infra, Parkes does not change
the outcome of the instant section 2255 motion.


### (3)

### Absence of Federal Jurisdiction

Fabian next claims that his conviction should be vacated and
the indictment be dismissed because the government failed to
establish the jurisdictional element of the Hobbs Act.  Mem. in
Supp. at 9.  Specifically, he argues that: 1) a defendant's
belief as to the object of the robberies "can never be a basis

16

for establishing jurisdiction" in Hobbs Act prosecutions, id. at 24; and 2) there was no evidence that the "activities contemplated by the conspiracy would have affected interstate commerce," id. at 21. See also Mem. in Supp. at 9-13; Reply at 6. Therefore, Fabian argues, he is "being unconstitutionally confined in the absence of federal jurisdiction." Supplemental Mem. in Supp. at 19. These arguments effectively re-articulate the insufficiency claim raised and rejected on Fabian's direct appeal.

### a. "Belief" as a basis for Hobbs Act jurisdiction

Regarding the first claim, Fabian concedes that the Second Circuit already heard and decided that an appropriate premise for federal jurisdiction in this case was Fabian's belief as to the object of the robberies. Fabian, nevertheless, goes on to argue that the legal premise of that decision is untenable. See, e.g., Supplemental Mem. in Supp. at 21 ("[T]here is no sound basis for making a defendant's beliefs into a basis for finding interstate commerce where there is no evidence for finding that there would have been such an effect. If a belief-based approach were tenable, then federal jurisdiction would turn entirely on the conspirators' subjective beliefs - regardless of whether there was any reasonable probability that interstate commerce would be affected."). Not only was this issue clearly argued and rejected

outright by the Second Circuit on appeal, but subsequent Second

Circuit decisions clarifying <u>Fabian</u> have addressed these very

issues.  For example, in <u>United States v. Silverio</u>, 335 F.3d 183

(2d Cir. 2003), the Second Circuit explained:

> We did not conclude in [<u>Fabian</u>] that intent or knowledge is
> an element necessary to establish an effect on interstate
> commerce; rather, we found that when circumstances make such
> an effect an impossibility, a robber's belief about the
> object of the robbery is sufficient to establish the
> interstate nexus. <u>See</u> <u>Fabian</u>, 312 F.3d at 555-56.  In other
> words, in the absence of an actual effect on interstate
> commerce, a defendant's belief about the nature of his crime
> may be determinative.  But when, as here, ample effects on
> interstate commerce are demonstrated, the state of mind of
> the defendant is not relevant.

<u>Silverio</u>, 335 F.3d at 187.  Additionally, in <u>Parkes</u>, the Second

Circuit reaffirmed that the defendant's belief as to the object

of the robberies was legally relevant.  <u>See</u> <u>Parkes</u>, -- F.3d. —-,

2007 WL 2317395, at *8 (explaining the intent of the attempted

robbery and holding there was sufficient evidence at trial to

"support the jury's conclusion that the attempted robbery of

Medina (described by Parkes as 'a local, part-time marijuana

dealer,') would have affected interstate commerce").

As discussed, <u>supra</u>, a section 2255 cannot be used to

relitigate issues raised and considered on direct appeal or "a

slightly altered rearticulation" of those same claims.  <u>See,</u>

<u>e.g.</u>, <u>Riascos-Prado v. United States</u>, 66 F.3d 30, 35 (2d Cir.

1995) (declining to consider movant's claims in a section 2255

motion where they were "a slightly altered rearticulation" of

claims previously raised, and rejected, on direct appeal).

In order to avoid this result, Fabian argues that even if the Second Circuit's decision in <u>Fabian</u> precludes action, a "federal court has the obligation to re-examine the question of jurisdiction at any time" and "to release the petitioner if it determines that the court 'was without jurisdiction to impose sentence.'"  Supplemental Mem. in Supp. at 24-25.  However, the Second Circuit's decision in <u>Fabian</u> as it relates to Fabian's belief as to the robbery victims, as well as subsequent decisions explaining why a robber's belief about the object of the robbery is an appropriate basis for Hobbs Act jurisdiction, remain the law.  Thus, this Court declines to reconsider the issue in a section 2255 motion.  <u>See, e.g.</u>, <u>Giacalone v. United States</u>, 739 F.2d 40, 44 (2d Cir. 1984) (declining to reconsider in a section 2255 motion an issue disposed of on direct appeal by summary order, explaining "[w]e see no reason to reexamine the issue").

**b. Effect on interstate commerce jury instruction**

Fabian argues that the government offered no evidence that attempting to steal loan sharking and narcotics trafficking proceeds would have affected interstate commerce and the jury instructions importing congressional findings from the Controlled Substance Act allowed the government to "lighten their burden of proof."  Mot. at 5.  <u>See also</u> Mem. in Supp. at 6-13.  This is

essentially an insufficiency of the evidence claim, which was raised and disposed of on direct appeal.  See Fabian, 312 F.3d at 553-57.

Settled case law provides that, except in narrow circumstances, a defendant may not use a section 2255 motion to relitigate claims that were raised and rejected on direct appeal. See, e.g., Sanin, 252 F.3d at 83 (quoting Cabrera, 972 F.2d at 25).  Indeed, reconsideration of issues already decided on direct appeal will only be permitted in a section 2255 motion when: 1) "there has been an intervening change in the law"; and 2) "the new law would have exonerated a defendant had it been in force before the conviction was affirmed on direct appeal." Sanin, 252 F.3d at 83 (quoting Chin v. United States, 622 F.2d 1090, 1092 (2d Cir. 1980)) (emphasis added).  An intervening change in law may exonerate a defendant where the law "change[s] the definition of what constitutes a 'crime.'" Bennett v. United States, 03-CV-1852, 2006 WL 738162, at *7 (S.D.N.Y. Mar. 22, 2006), aff'd on reconsideration, 03-CV-1852, 2006 WL 1751242 (S.D.N.Y. June 26, 2006) (quoting Coleman v. United States, 329 F.3d 77, 83 (2d Cir. 2003)).  However, where the intervening change in law does not result in "defendants having been convicted for conduct no longer deemed illegal," the relitigation bar will apply.  Id. at *7. See also Piervinanzi v. United States, 151 F. Supp. 2d 266, 270 (S.D.N.Y. 2001) (Collateral attacks on sentences are only allowed

"when the substantive law underlying [movant's] convictions is
abrogated, rendering [movant's] formerly illegal conduct legal.")
(citing Davis v. United States, 417 U.S. 333, 346-47 (1974) and
United States v. Loschiavo, 531 F.2d 659, 659 (2d Cir. 1976)).

Arguably, the Second Circuit's holding that a charge
instructing the jury that interstate commerce was affected as a
matter of law was unconstitutional is an intervening change in
law.  However, reconsideration of Fabian's insufficiency claim is
not warranted, even in light of this decision.  The Second
Circuit did not hold in Parkes that the attempted robbery of loan
sharking and drug trafficking proceeds could not be a basis for a
Hobbs Act conviction; it only held erroneous a jury instruction
given at Fabian's trial.  Thus, although Parkes may be considered
an intervening change of law, this change would not have
exonerated Fabian.  See, e.g., Bennett, 2006 WL 738162, at *7
(holding that because the "claimed intervening change in law" did
not "alter the scope of criminal liability for the statutes under
which [movant] was charged and convicted - i.e., securities
fraud, bank fraud, money laundering . . . it does not fall under
Chin['s test for relitigation]"); Sanchez v. United States, No.
93-CV-1169, 1993 WL 2697310, at *2 (S.D.N.Y. July 13, 1993)
(holding where newly amended Sentencing Guideline was only
relevant to petitioner's sentence, not to his conviction, movant
was precluded from relitigating a claim raised on direct appeal

21

in a section 2255 motion).

Moreover, although the jury was, in light of <u>Parkes</u>, erroneously instructed that the interstate commerce element was satisfied as a matter of law, there was ample evidence in the record that Fabian believed he was stealing from a loan shark and that he was stealing drug trafficking proceeds that originated in Miami. <u>Fabian</u>, 312 F.3d at 558. Even if the jury had been left to determine whether the proceeds of narcotics and loan sharking activities involved would have affected interstate commerce, instead of being instructed to that effect as a matter of law, given the <u>de minimis</u> showing required, the jury would have found this jurisdictional element satisfied. First, as to the second robbery, it is clear from the evidence that Fabian believed that "the drug proceeds in question traveled in interstate commerce from Miami, Florida [to New York], and thus were in the stream of commerce." <u>Fabian</u>, 312 F.3d at 556 (citations omitted). As to the first robbery, although there was no proof in the record that loan sharking affected interstate commerce, if, at the time of Fabian's trial, the law in the Second Circuit required the government to prove that the object of the robberies would have had a <u>de minimis</u> effect on interstate commerce, the government would no doubt have offered proof of the interstate nature of loan sharking and I would no doubt have allowed such proof to be

offered.[12]  Thus, there is no possibility that Fabian would have

been "exonerated" as a result of this "intervening change in the

law," as required by the Second Circuit.  <u>Sanin</u>, 252 F.3d at 83

(quoting <u>Chin</u>, 622 F.2d at 1092).  As the case would have then

been tried, there would have been a more than sufficient nexus to

interstate commerce on the robbery of Veraz, because, as the

---

[12] Before and after the appellate decision in <u>Fabian</u>,
district courts in the Second Circuit disagreed whether the jury
needed to determine whether certain activities affected
interstate commerce for purposes of conviction under the Hobbs
Act.  <u>Compare</u> <u>Gomez</u>, 2005 WL 1529701, at *6, 11 (finding
unconstitutional the instruction "Congress has determined that
all narcotics activity . . . has a substantial affect on
interstate commerce," reasoning that the instruction "'removed
from the jury at least a portion of the jurisdictional element'
of a Hobbs Act offense") (quoting <u>United States v. Vasquez</u>, 267
F.3d 79, 88 (2d Cir. 2001)) <u>with</u> <u>Lorenzano</u>, 2007 WL 29231, at *9
(explicitly rejecting <u>Gomez</u> and upholding instruction
"[a]ctivities affecting or potentially affecting unlawful
interstate activity, such as drug dealing and trafficking, fall
within the purview of the statute . . . [I]f you find that the
object of the robbery was to obtain illegal drugs or money earned
from the sale of drugs, you may find the [interstate commerce]
element satisfied") <u>with</u> <u>Robles</u>, 2006 WL 988249, at *1
(explicitly rejecting <u>Gomez</u>, and upholding the propriety of the
instruction "obtaining the proceeds of narcotics trafficking[] is
interstate commerce," reasoning "[i]t is a question of law
whether the interstate commerce requirement of the Hobbs Act is
satisfied by the fact that a robbery is intended to secure
illegal narcotics or the proceeds of illegal narcotics sales.
The factual question of whether the robberies charged in this
case were so intended was a question for the jury and that
question was properly submitted to the jury and left to its
decision").  <u>See also</u> L. Sand, et. al., <u>Modern Federal Jury
Instructions - Criminal</u>, ¶ 50.01 (2006) ("[T]here is some
authority for instructing the jury that as a matter of law a
particular transaction affects interstate commerce, but requiring
the jury to find that the transaction in fact occurred.  This
procedure is questionable in light of <u>United Stated v. Gaudin</u>,
requiring the jury to be charged on every element of the
crime.").

Second Circuit noted, it is clear from the evidence that "Fabian believed [Veraz] to be a loan shark, and by stealing the proceeds of the loan sharking business Fabian depleted the available assets for that business." Fabian, 312 F.3d at 555 (citations omitted). Therefore, absent the instruction, the jury would have had evidence from which to conclude that the intended objects of the robberies would have affected interstate commerce; Fabian's defense was not prejudiced by the jury being given the erroneous instruction.[13] Accordingly, Parkes does not warrant a reconsideration of Fabian's insufficiency claim in his section 2255 motion.

**(4)**

## Ineffective Assistance of Counsel Claim Based on Alleged Inadequate Cross-Examination

Fabian next argues that "Adler's failure to subject the [government's] case to meaningful adversarial testing rendered the resulting guilty verdict unreliable." Mem. in Supp. at 3.

Ineffective assistance of counsel claims based on inadequate cross-examination are strongly disfavored. Decisions about "'whether to engage in cross-examination, and if so to what

---

[13] Any Judge or attorney who has tried any number of cases knows that jurisdictional issues are rarely the deciding factor for juries, especially where, as here, the defendant's conduct was especially egregious.

extent and in what manner, are ... strategic in nature' and generally will not support an ineffective assistance claim." Dunham v. Travis, 313 F.3d 724, 732 (2d Cir. 2002) (quoting United States v. Nersesian, 824 F.2d 1294, 1321 (2d Cir. 1987). "[T]he conduct of examination and cross-examination is entrusted to the judgment of the lawyer, and an appellate court on a cold record should not second-guess such decisions unless there is no strategic or tactical justification for the course taken." Eze v. Senkowski, 321 F.3d 110, 127 (2d Cir. 2003) (quoting United States v. Luciano, 158 F.3d 655, 660 (2d Cir. 1998)) (internal quotation marks omitted). Thus, "[c]ourts must accord significant deference to trial counsel's decision how to cross-examine witnesses or otherwise present a defense," Mason v. United States, No. 06-CV-499, 2006 WL 2168971, at *3 (N.D.N.Y. July 29, 2006), and cannot "use perfect hindsight to criticize unsuccessful trial strategies," Eze, 321 F.3d at 132.

Fabian attempts to surmount this high hurdle by claiming that "Adler was so focused on trying to discredit the witnesses that he forgot to ask the witnesses the most important questions, those that would prove a total absence of an effect on interstate commerce." Mem. in Supp. at 4. For example, Fabian calls attention to the fact that Adler never asked Taveras, Fabian's co-conspirator who testified against him pursuant to a cooperation agreement, what kind of drugs were being dealt by

Montoyo and never asked Veraz to provide his definition of a "loan shark."  Id. at 4.

However, both the record and Adler's Affirmation directly controvert Fabian's allegations.  Adler testifies that he undertook cross-examination of the witnesses "only after having extensively reviewing the '3500' material, assess[ing] the direct examination and consult[ing] with [Fabian]."  Adler Aff. at ¶ 16. He further testifies that the "cross-examination of [the victims, Gomez and Veraz] was focused and planned" and that he "attempted, within the limits of cross-examining hostile witnesses, to elicit testimony calculated to undercut the Government's case - both factually, and legally."  Adler Aff. at ¶ 19.  The record corroborates Adler's account, demonstrating that Adler conducted a thorough and effective cross-examination of both Veraz and Gomez.  Moreover, as the government points out, Adler "barraged [Taveras] with questions about his criminal background, including his use of narcotics, thereby laying bare both his possible motive to lie and his possibly impaired ability to remember facts correctly."  Mem. in Opp. at 22-23 (citations to transcript omitted).  Furthermore, contrary to Fabian's allegations that Adler neglected to ask the witnesses questions tending to show the absence of an effect on interstate commerce, the record reflects that Adler got Veraz to testify he was not a loan shark, Tr. at 398, and got Gomez to testify that she did not know

Montoya was a narcotics dealer, Tr. at 94. Questions about what kind of drugs were being dealt by Montoya or how Veraz defined a "loan shark," Mem. in Supp. at 4, would have severely undercut this helpful testimony. Thus, as Adler's decisions about what questions to ask on cross-examination were strategic, they fall within the wide range of acceptable professional assistance and will not support an ineffective assistance claim. See United States v. Bari, 750 F.2d 1169, 1182 (2d Cir. 1984) (finding no ineffective assistance where "further cross-examination by [petitioner's] counsel might well have been counterproductive."). See also, Dunham, 313 F.3d at 732 (citing Nersesian, 824 F.2d at 1321).

Fabian has not overcome the strong presumption that Adler's conduct was reasonable, nor has he established that he was prejudiced by counsel's failure to further develop the lack of interstate commerce element. Fabian's ineffective assistance claim based on alleged ineffective cross-examination is, therefore, denied.

## (5)

## Constructive Amendment of the Indictment

Relying on Stirone v. United States, 361 U.S. 212 (1960), Fabian claims that there is a variance between the charges alleged in the indictment and the evidence provided at trial and

that this variance, coupled with the disputed jury instruction,
amounts to a constructive amendment of the indictment.  Mot. at
5.  Fabian argues that this error was sufficiently egregious that
his attorney's failure to object to it violated his Sixth
Amendment right to effective assistance of counsel.  Id.

"A constructive amendment occurs when the government's
presentation of evidence and the district court's jury
instructions combine to 'modify essential elements of the offense
charged to the point that there is a substantial likelihood that
the defendant may have been convicted of an offense other than
the one charged by the grand jury.'" United States v. Vebeliunas,
76 F.3d 1283, 1290 (2d Cir. 1996) (quoting United States v.
Clemente, 22 F.3d 477, 482 (2d Cir. 1994)).  When a constructive
amendment affects an essential element of the charged offense, it
is a per se violation of the grand jury provision of the Fifth
Amendment and requires reversal without a showing of prejudice.
United States v. Coyne, 4 F.3d 100, 112 (2d Cir. 1993).  A
"constructive amendment is typically found where the government
offers proof of offenses or transactions not even mentioned in
the indictment." United States v. Berger, 224 F.3d 107, 117 (2d
Cir. 2000).

The basis for Fabian's constructive amendment claim is that
Counts One and Two the indictment charged Fabian with
interference of interstate commerce through the "robbery of

narcotics proceeds from residents of a home located in . . . New York," Superceding Indictment No. 00-DR-575-(S-1)(DGT), but the proof offered at trial established that Fabian thought he was robbing someone who had already robbed a drug dealer. Mem. in Supp. at 5-6, 15-16. Fabian argues that Montoya "was a thief, not a drug dealer," id. at 5, and, mimicking Judge Parker's dissent in <u>Fabian</u>, 312 at 560-63, argues that testimony at trial established that the intent of the second robbery was to steal the proceeds of another robbery, not the proceeds of narcotics trafficking, id.

Fabian admittedly has not raised the issue of constructive amendment on direct appeal and, as such, is procedurally barred from raising this claim collaterally in a section 2255 motion, unless he can show "cause" for failing to raise the claim and actual resulting "prejudice," or that he is "actually innocent." <u>See</u> <u>Bousley</u>, 523 U.S. at 622. <u>See also</u> <u>Reed v. Farley</u>, 512 U.S. 339, 354 (1994); <u>Campino v. United States</u>, 968 F.2d 187, 190 (2d Cir. 1992); <u>United States v. Munoz</u>, 143 F.3d 632, 637 (2d Cir. 1998) ("A motion under § 2255 is not a substitute for an appeal.") (citations omitted). Although Fabian's petition fails to explicitly address this issue, presumably, Fabian's proffered "cause" is his allegation that Adler was ineffective for failing to raise the constructive amendment issue on appeal. The merits of his constructive amendment claim, therefore, will only be

addressed to the extent that they bear on Fabian's ineffective
assistance claim.

## b. Ineffective assistance for failure to raise constructive amendment on appeal

Fabian alleges that Adler was ineffective for failing to
raise the purported constructive amendment of the indictment on
appeal.  Mot. at 5.  Fabian argues that by raising these issues
in Rule 29 and Rule 33 motions, Adler "demonstrated the fact that
he knew there was a variance with the proof elicited at trial as
opposed to the charges in the indictment", but, nevertheless,
"failed to raise them on the appellate level."  Mem. in Supp. at
5-6.  Fabian points to Judge Parker's dissent in <u>Fabian</u>, 312 at
560-63, arguing that this dissent indicates that had Adler raised
this issue on appeal, "there is a very good chance the case would
have been reversed or amended."  Mem. in Supp. at 6.

First, Fabian had failed to show that Adler's failure to
raise constructive amendment on appeal was so deficient it "fell
below an objective standard of reasonableness," as judged by
"prevailing professional norms."  <u>Strickland</u>, 466 U.S. at 688-89.
Attorneys have a right to make a judgment about what to raise on
appeal and actions or omissions by counsel that might be
considered sound strategy do not constitute ineffective
assistance.  <u>Id.</u> at 689.  Adler had already raised the
constructive amendment issue in Rule 29 and Rule 33 motions, and

it was not outside the realm of professional norms to decide not to pursue this claim again on appeal.  See Jelinek, 247 F. Supp. 2d at 266-67 (quoting Mayo v. Henderson, 13 F.3d 528, 533 (2d Cir. 1994) ("Appellate counsel does not have a duty to advance every nonfrivolous argument that could be made.").

Furthermore, Fabian has not made out the requisite prejudice.  The underlying factual predicate of Fabian's constructive amendment claim is dependant on the determination that both: 1) the jury believed Fabian intended to rob proceeds from a theft, not proceeds ultimately derived from a drug deal; and 2) robbing someone who had already robbed a drug dealer is insufficient to make out the requisite nexus to interstate commerce necessary for Hobbs Act jurisdiction to attach. Although discussed outside of the constructive variance context, the Second Circuit squarely addressed both of these issues in Fabian.  First, the Second Circuit concluded that:

> [C]ontrary to the dissent's contention, Fabian and his associates did not perceive the money merely as 'robbery proceeds' . . . . The jury, instructed that the interstate commerce nexus would be met if the object of the robbery was drug proceeds, must have believed that Fabian and the other defendants committed this home invasion because they believed they would find a large sum of money originally derived from drug trafficking there.

Fabian, 312 F.3d at 556.  Then, the Second Circuit definitively held that attempting to steal "money originally derived from drug trafficking" was sufficient to established a sufficient nexus to interstate commerce.  Fabian, 312 F.3d at 557.  The court

specifically noted:

> We . . . believe that drug proceeds affect interstate
> commerce. Moreover, would-be robbers then target homes such
> as the Montoya residence, because they believe they will
> find large sums of money that would not exist absent drug
> trafficking. Here, the connection between the original drug
> trafficking and the goal of this robbery is easily
> traceable, and the evidence of an interstate commerce nexus
> is sufficient.

Fabian, 312 F.3d at 557. In effect, the money was considered

drug trafficking proceeds when Montoya stole originally it and

remained drug trafficking proceeds when Fabian attempted to steal

it from Montoya. Thus, although the indictment stated that the

interstate commerce element would be made out by proof that

Fabian conspired to steal drug trafficking proceeds and proof at

trial established that Fabian conspired to rob someone he

believed had already stolen drug trafficking proceeds, because

the Second Circuit found Fabian possessed the later intent and

found the object of both robberies to be analogous, Fabian was

convicted of the very same charge for which he was indicted.

Accordingly, there is no "substantial likelihood" that Fabian

"may have been convicted of an offense other than the one charged

by the grand jury.'" Vebeliunas, 76 F.3d at 1290 (quoting

Clemente, 22 F.3d at 482).

Because the evidence presented at trial did not

constructively amend the indictment in violation of Stirone,

Adler cannot be held ineffective for failing to raise that claim.

See Guidice v. United States, 03-CV-4983, 2007 WL 1987746, at *6

32

(E.D.N.Y. July 3, 2007) (finding no ineffective assistance of counsel for failure to raise <u>Stirone</u> claim where <u>Stirone</u> claim was meritless).  <u>See also</u> <u>Sanchez v. United States</u>, No. 04-CV-1827, 2005 WL 1005159, at *3 (S.D.N.Y. Apr. 30, 2005) (holding in section 2255 motion that "failure to assert a baseless claim does not fall below an objective standard of reasonableness nor prejudice the defendant.")

Having failed to establish cause and prejudice for failing to raise his <u>Stirone</u> claim regarding the interstate commerce nexus on direct appeal, Fabian's claim is procedurally barred. <u>See</u> <u>Guidice</u>, 2007 WL 1987746, at *6 (finding constructive amendment claim procedurally barred where movant did not raise claim on direct appeal and did not make out "cause" for failure to raise such claim).

## Conclusion

For the aforementioned reasons, Fabian's motion is denied, as is his request for a Certificate of Appealability.  The Clerk of the Court is directed to close the case.

Dated:     Brooklyn, New York
           August 28, 2007

                              SO ORDERED:


                              _____/s/_____
                              David G. Trager
                              United States District Judge